UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21631-CV-COOKE



In re Emergency *Ex Parte* Application of
DAVID A. GODFREY AND YUKOS
FINANCE B.V. for an order to conduct
discovery for use in a foreign proceeding.
_____/

**DAVID A. GODFREY'S AND YUKOS FINANCE B.V.'S EMERGENCY *EX PARTE*
APPLICATION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW**

7GOODMAN

GIBSON, DUNN & CRUTCHER LLP
*Of Counsel for David A. Godfrey and Yukos Finance B.V.*
200 Park Avenue
New York, New York, 10166
Telephone: (212) 351-3917
Fax: (212) 351-5246
Email: rserio@gibsondunn.com


Robert F. Serio
*pro hac vice motion pending*

RIVERO MESTRE LLP
*Attorneys for David A. Godfrey and Yukos Finance B.V.*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: jmestre@riveromestre.com
Email: kblanson@riveromestre.com


Jorge A. Mestre
Florida Bar No. 088145
Kadian Blanson
Florida Bar No. 098880

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. RELEVANT FACTS ...........................................................................................................3

    A. Stephen Lynch ............................................................................................................3

    B. The Russian Government's Campaign Against Yukos Oil ........................................4

    C. Auction of Yukos Finance's Assets ............................................................................5

    D. The English Proceedings and Respondent's Attempts to Evade Service ..................5

III. SECTION 1782 AUTHORIZES THE DISCOVERY PETITIONERS SEEK ....................7

    A. Applicable Legal Principles........................................................................................7

    B. The Information Sought Is Highly Relevant and Presumptively Discoverable...............8

    C. Petitioners' Request Meets the Statutory Requirements of Section 1782 .................9

        1. Stephen Lynch Is Found Within This District..............................................9

        2. The Discovery Sought Is Intended For Use in a Foreign Proceeding .................9

        3. Each of the Petitioners Is an Interested Person..........................................10

    D. The Intel Discretionary Factors Weigh In Favor of Granting Petitioners' Application................................................................................................................10

        1. Respondent Has Actively Avoided Participation in the English Proceedings.................................................................................................10

        2. The Nature of the Foreign Tribunal, the Character of the English Proceeding and the English Court's Receptivity to Assistance Favor Granting the Petition...................................................................................11

        3. This Application Is Not an Attempt to Circumvent English Law or Policy..........12

        4. The Discovery Is Neither Unduly Burdensome Nor Intrusive ..............................13

    E. *Ex Parte* Relief Is Appropriate Under Section 1782(a).................................................14

IV. CONCLUSION ................................................................................................................15

**Cases**

*In re Alianza Fiduciaria S.A.*,
    2013 WL 6225179, at *4 (S.D. Fla. Oct. 24, 2013) .................................................................. 14

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS*
    *Forwarding (USA), Inc.*,
    747 F.3d 1262 (11th Cir. 2014) ............................................................................................... 10

*In re Ex Parte Application of Glob. Energy Horizons Corp.*,
    2015 WL 1325758 (N.D. Cal. Mar. 24, 2015) ............................................................... 9, 11, 12

*In re Ex Parte Application of Godfrey*,
    No. 15-24604 (S.D. Fla. Dec. 17, 2015) .................................................................... 2, 3, 8, 9, 10

*In re Application of Guy*,
    2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ...................................................................... 10, 11

*In re Application of Mesa Power Grp., LLC*,
    878 F. Supp. 2d 1296 (S.D. Fla. 2012) ..................................................................................... 11

*In re Application of Michael Wilson & Partners, Ltd.*,
    2007 WL 2221438, at *5 (D. Colo. July 27, 2007) ................................................................... 12

*In re Application of Sarrio S.A. for Assistance Before Foreign Tribunals*,
    173 F.R.D. 190 (S.D. Tex. 1995) .............................................................................................. 13

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) .................................................................................................... 3, 7

*In re Bracha Found.*,
    2015 WL 6123204, at *1 (N.D. Ala. Oct. 19, 2015) ................................................................. 14

*In re Braga*,
    272. F.R.D. 621, 625 (S.D. Fla. 2011) ................................................................................... 1, 14

*In re Chevron Corp.*,
    2012 WL 3636925 (S.D. Fla. June 12, 2012) ........................................................................... 3, 9

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) .............................................................................................. 7, 10

*Glock v. Glock, Inc.*,
    797 F.3d 1002, 1005 (11th Cir. 2015) ......................................................................................... 7

*Green Dev. Corp. S.A. De C.V. v. Zamora*,
    2016 WL 2745844, at *3 (S.D. Fla. May 10, 2016) .................................................................. 12

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ..................................................................................... 14

*Hickman v. Taylor*,
    329 U.S. 493 (1947) ........................................................................................................ 13

*Hulley Enter. Ltd. v. The Russian Fed'n*,
    PCA Case No. AA 226, Final Award (July 18, 2014) ..................................................... 4

*In re IKB Deutsche Industriebank AG*,
    2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) ................................................................... 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) .......................................................................... 3, 7, 8, 10, 11, 12, 13

*In re Letter of Request from Crown Prosecution Serv. of United Kingdom*,
    870 F.2d 686 (D.C. Cir. 1989) ....................................................................................... 12

*London v. Does 1-4*,
    279 F. App'x 513, 515 (9th Cir. 2008) .......................................................................... 13

*Minick v. Minick*,
    149 So. 483 (Fla. 1933) ................................................................................................... 9

*In re Neves*,
    2011 WL 3502770 (S.D. Fla. Aug. 8, 2011) ................................................................... 9

*Sergeeva v. Tripleton Int'l Ltd.*,
    834 F.3d 1194 (11th Cir. 2016) ....................................................................................... 9

*Siemens AG v. W. Digital Corp.*,
    2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ................................................................ 11

*United Kingdom v. United States*,
    238 F.3d 1312 (11th Cir. 2001) .................................................................................. 7, 8

*Weber v. Finker*,
    554 F.3d 1379, 1385 (11th Cir. 2009) ........................................................................... 13

**Statutes**

28 U.S.C. § 1782 ............................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 45 ......................................................................................................................... 9

## I. INTRODUCTION

David A. Godfrey and Yukos Finance B.V. ("Yukos Finance") (together, the "Petitioners") respectfully submit this emergency *ex parte* application (the "Application"), along with the Declaration of Robert F. Serio ("Serio Decl.") and Declaration of Bernard O'Sullivan ("O'Sullivan Decl."), and all exhibits affixed thereto, for an order to conduct discovery in aid of foreign litigation, pursuant to 28 U.S.C. § 1782 ("Section 1782") and Fed. R. Civ. P. 45. Petitioners seek the deposition of and limited document discovery from respondent Stephen Lynch ("Respondent") for use in *Yukos Finance B.V. et al. v. Lynch et al.*, CL-2015-000829, an action pending before the High Court of Justice, Queen's Bench Division, Commercial Court, in London, England (the "English Proceedings"). *See* Serio Decl. Exs. 8-9. Respondent is an individual who maintains a residence in this District and has key personal knowledge of the circumstances underlying the dispute at issue in the English Proceedings. Petitioners move *ex parte* in order to prevent Respondent from evading service of Petitioners' subpoena and because *ex parte* proceedings are specifically authorized and routinely permitted under Section 1782. *See In re Braga*, 272. F.R.D. 621, 625 (S.D. Fla. 2011) ("[M]ost § 1782 applications . . . are filed and decided ex parte."). Petitioners filed this emergency application because, on information and belief, Respondent will be present at his residence in the District only through May 3, 2017, after which he will be traveling internationally for a prolonged period.[1]

Russian entity OAO NK Yukos Oil Company ("Yukos Oil") was expropriated by the Russian Federation in a series of rigged auctions designed to hand Russian-state owned entities over $1 billion in Yukos Oil's assets. A group of investors including Monte-Valle (a real estate agency founded and managed by Respondent Stephen Lynch), VR Capital Group Ltd., HBK Capital Management, and Renaissance Capital (collectively, the "Consortium"), participated in the rigged auction for the purchase of Yukos Oil assets sold in "Lot 19" in Russia on August 15, 2007. *See* Serio Decl. Exs. 3-5. Among the assets purportedly acquired by the Consortium was Yukos Finance, a Dutch subsidiary of Yukos Oil. The Lot 19 bankruptcy liquidator, Eduard Rebgun, permitted only pre-approved bidders to participate in the Yukos Finance auction, leading the

---

[1] Petitioners are prepared to stipulate to a reasonable briefing schedule should Respondent choose to move to quash this Application. Petitioners are also willing to conduct Respondent's deposition outside this District, should another location prove more convenient for Respondent.

1

Consortium, through its member Monte-Valle, to acquire OOO Promneftstroy ("Promneftstroy"), one such approved bidder, from the Russian state-owned Rosneft Oil Company ("Rosneft"). *See* Serio Decl. Exs. 3-5. With the knowledge they would emerge victorious from the auction, Promneftstroy and Rosneft divvied up the Lot 19 assets prior to the auction. Promneftstroy ultimately won the auction, purchasing Yukos Oil's assets for far below the fair market value.[2]

Shortly thereafter, Petitioners and their affiliates filed suit in the Netherlands, the home of Yukos Finance, disclaiming the rigged auction of Lot 19 and asserting their rightful ownership of Yukos Finance (the "Dutch Proceedings"). Serio Decl. ¶ 8. The last stage of that litigation, called *Godfrey v. OOO Promneftstroy*, is currently pending before the Amsterdam Court of Appeal. Specifically at issue in the Dutch Proceedings is (i) whether the actions taken by liquidator Eduard Rebgun, including his collusion with Promneftstroy and Rosneft in rigging the auction, lack legal effect in the Netherlands; and (ii) whether recognition of Promneftstroy's claim to the shares in Yukos Finance contravenes Dutch public order. *Id.* On December 17, 2015, this Court entered an order granting a Section 1782 petition that allowed Petitioners to seek the same limited discovery sought here from Respondent Stephen Lynch in connection with the Dutch Proceedings. *See* Order, *In re Ex Parte Application of Godfrey*, No. 15-24604, (S.D. Fla. Dec. 17, 2015) ("*Ex Parte Godfrey*") (granting application to serve subpoenas on Stephen Lynch and compel him to appear for deposition); Serio Decl. Ex. 10. However, due to Respondent's evasion of service, Petitioners were unable to obtain the discovery that this Court ordered.

The English Proceedings involve the same underlying allegations and core set of facts as the Dutch Proceedings. In the English Proceedings, Petitioners and other claimants (together, "Claimants") allege that the defendants, all members of the Consortium, caused them harm by wrongfully causing or facilitating the participation of Promneftstroy in the auction of shares in Yukos Finance on August 15, 2007, knowing and intending that it had been pre-determined that such auction would purportedly be won by Promneftstroy at a pre-agreed price. Claimants seek the costs and expenses that they have incurred as a result of (i) investigating the circumstances surrounding the 2007 sham auction of Lot 19 and (ii) protecting their rights, including by bringing and defending the Dutch Proceedings with respect to the ownership and control of Yukos Finance and related companies. O'Sullivan Decl. ¶¶ 3-4, 12.

---

[2] Aside from Promneftstroy, the only other bidder was an obscure shell company with no known business operations that had bid and lost several other bankruptcy auctions.

2

As general director of Promneftstroy, Respondent Lynch participated in the 2007 sham auction through which Promneftstroy, with the support of and due to the involvement of Rosneft, purported to acquire the shares of Yukos Finance. As such, Respondent has critical personal knowledge about the Yukos Finance auction and how it was predetermined to be won by Promneftstroy at a pre-agreed price, Promneftstroy's ownership claims in Yukos Finance, and the roles of other parties who colluded with Promneftstroy to rig the auction of Lot 19, all of which is highly relevant to the dispute at the heart of the English Proceedings. *See* O'Sullivan Decl. ¶¶ 13-15.

Section 1782 enables foreign litigants to obtain evidence from persons located in the United States in aid of a foreign proceeding. This Application seeks limited discovery in the form of: (i) a deposition of Stephen Lynch, a resident of this District; and (ii) narrowly tailored document discovery. The requirements for issuance of a Section 1782 subpoena are minimal and are met by this Application. *See, e.g., Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249, 264-65 (2004). Where, as here, the information sought is relevant, it is "presumptively discoverable" under Section 1782. *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998); *see also In re Chevron Corp.*, 2012 WL 3636925, at *7 (S.D. Fla. June 12, 2012) ("In fact, the court need not, nor should it, determine whether the discovery would actually or even probably, be admissible in the foreign proceedings."). Petitioners thus respectfully request that this Court grant their Application.

## II. RELEVANT FACTS

### A. Stephen Lynch

Respondent Stephen Lynch is an individual found within the Southern District of Florida. *See Ex Parte Godfrey*, No. 15-24604, at 2 ("Respondent [Lynch] resides or may be found in the Southern District of Florida."); Serio Decl. Ex. 10, Order. Respondent Lynch currently maintains a residence in Miami-Dade County at a property he purchased in 2014. *See* Serio Decl. Ex. 6. Respondent is the founder and manager of the real estate firm Monte-Valle. Serio Decl. Exs. 3-5. Respondent is also the general director of Promneftstroy, which was acquired by Monte-Valle on behalf of the Consortium and was the purported winner of the Yukos Oil assets sold in the rigged auction of Lot 19 on August 15, 2007, including Yukos Finance, a Dutch subsidiary.

B.  **The Russian Government's Campaign Against Yukos Oil**

Yukos Oil was Russia's largest crude oil producer and exporter until late 2003. Along with its subsidiaries, Yukos Oil produced slightly less than 20% of the total crude oil produced in Russia and refined and marketed slightly less than 20% of the refined products in Russia. Yukos Oil was generally regarded as Russia's most progressive, transparent, and successful multinational company. As a result, it attracted a considerable amount of foreign investment from around the world. In April 2004, Yukos Oil's market capitalization (on Russia's ruble-denominated MICEX exchange) was over $40 billion.

The Russian government began its attack on Yukos Oil in October 2003 when, in a move that has been widely condemned as politically motivated, the Russian government jailed Mikhail Khodorkovsky, Yukos Oil's Chief Executive Officer and largest indirect shareholder. Serio Decl. Ex. 7. The Russian government's manufactured charges included, among others, alleged tax liabilities related to Yukos Oil. *Id.* Since that time, the Russian government has engaged in the ongoing persecution of numerous Yukos Oil officials and founders, and has effectively nationalized Yukos Oil by improperly assessing back taxes, improperly preventing Yukos Oil's voluntary payment of those alleged taxes, and forcing the sale of the company's assets at auction and then acquiring those assets, largely through state-owned vehicles including Rosneft.

The actions of the Russian government have been widely condemned by numerous international observers, including the United States Department of State, the Parliamentary Assembly of the Council of Europe, the Council on Foreign Relations, the Independent Task Force on U.S. Policy toward Russia, and observers both inside and outside Russia. Indeed, on July 18, 2014, a highly distinguished arbitral tribunal sitting in The Hague under the auspices of the Permanent Court of Arbitration (PCA), held unanimously that the Russian Federation breached its international obligations under the Energy Charter Treaty (ECT) by destroying Yukos Oil and appropriating its assets, and as a result must pay more than $50 billion to the shareholders of the former Yukos Oil. *Id.* The tribunal found, among other things, that "the auction of Yuganskneftegaz," Yukos Oil's primary oil production subsidiary, was "rigged" and amounted to "a devious and calculated expropriation" by the Russian Federation. *Hulley Enter. Ltd. v. The Russian Fed'n*, PCA Case No. AA 226, Final Award, at 26, 324, 340 (July 18, 2014), *available at* http://www.italaw.com/sites/default/files/case-documents/italaw3278.pdf. The tribunal further

4

found that the bankruptcy proceedings in which Yukos Oil's remaining assets were auctioned were "the final act of destruction of the company by the Russian Federation." *Id.* at 376.

As a result of the Russian Federation's unlawful and confiscatory actions discussed above, Russian state-owned energy companies eventually acquired nearly all of Yukos Oil's assets through a series of sham auctions. Eduard Rebgun, Yukos Oil's liquidator in the Russian bankruptcy proceedings, managed each of these sham auctions. Serio Decl. Ex. 7.

### C.  Auction of Yukos Finance's Assets

Yukos Finance was a Dutch subsidiary of Yukos Oil. Eduard Rebgun, in his role as liquidator in the Yukos Oil bankruptcy, scheduled a sham auction of Yukos Finance shares on August 15, 2007 in Moscow. *Id.* Rosneft, the Russian state-owned oil company that acquired the majority of Yukos Oil's assets, colluded with Rebgun and others to ensure that the "winner" of the auction was a proxy for Rosneft and that the "winning" bid was pre-determined. *Id.* In connection with this fraud, Rosneft reached out to Stephen Lynch, who had previously successfully bid on other Yukos assets through his company Monte-Valle. Lynch assembled the Consortium to support a bid. Through Monte-Valle, the Consortium obtained Promneftstroy, a pre-approved bidder, from Rosneft. Promneftstroy bid on and won the "auction" of, *inter alia*, 100% of Yukos Finance's issued and outstanding shares for approximately $310 million, a pre-agreed price that was far below the fair market value of the shares. The only other bidder, Versar, was an obscure shell company with no known business operations that bid and lost several of the bankruptcy auctions. The winning bid was less than $10 million higher than the starting bid and represented less than one-third of Yukos Finance's actual value.

### D.  The English Proceedings and Respondent's Attempts to Evade Service

The English Proceedings were commenced by Petitioners by way of a Claim Form issued on November 23, 2015, and Particulars of Claim were subsequently filed on February 24, 2016. *See* Serio Decl. Ex. 8; O'Sullivan Decl. ¶ 5. Amended Particulars of Claim were filed on November 15, 2016. *See* Serio Decl. Ex. 9; *Id.* ¶ 8. As discussed above, Claimants seek from the defendants the costs and expenses of the legal proceedings in the Netherlands relating to the ownership and control of Yukos Finance and related companies as a consequence of the pre-determination of the auction of the shares in Yukos Finance, the purported transfer to Promneftstroy of Yukos Oil's shareholding in Yukos Finance and the purported exercise by or on

5

behalf of Promneftstroy of Yukos Finance's rights. *Id.* ¶ 12. Claimants allege that the defendants in the English Proceedings caused them harm by wrongfully causing or facilitating the participation of Promneftstroy in the auction of shares in Yukos Finance, knowing and intending that it had been predetermined that such auction would purportedly be won by Promneftstroy at a pre-agreed price. *Id.*

Respondent is a named defendant in the English Proceedings, but he has actively avoided participation in those proceedings. On March 23, 2016, the English court granted permission for Claimants to serve Mr. Lynch with documents from the English Proceedings out of the jurisdiction in the United States of America and Russia. On May 24, 2016, an extension was granted for service on Mr. Lynch in the United States and Russia until May 22, 2017. *Id.* ¶ 5. On January 1, 2017, Respondent was provided with the Amended Claim Form and Amended Particulars of Claim at Beirut Airport in Lebanon while checking in to an Aeroflot flight to Moscow. Respondent was witnessed examining the documents served upon him in sufficient detail to enable him to establish that they were court documents relating to the English Proceedings. However, after initially accepting and reviewing the documents, Respondent chose to abandon them at the check-in counter of the Aeroflot flight and instructed the check-in person to call airport security. Respondent departed Lebanon without the documents. *Id.* ¶¶ 25-26.

Attempts were made in Moscow to provide Respondent with notice that the events of January 1, 2017 in Lebanon amounted to service. When approached in Moscow on March 9, 2017, Respondent three times in short succession refused to accept documents from the English Proceedings. The first time that Respondent was approached in a restaurant in Moscow, he ran away so quickly that his chair suddenly fell to the ground as he moved off. O'Sullivan Decl. ¶ 27, Ex. C. On March 24, 2017, the English court granted an order holding, among other things, that personal delivery of the relevant documents from the English Proceedings to Respondent in Lebanon on January 1, 2017 constituted good service. *Id.* ¶ 10. On April 18, 2017, Respondent filed papers in the English Proceedings acknowledging service and indicating that he would be representing himself and intended to contest jurisdiction. Respondent has not filed any pleadings in the English Proceedings to date. *Id.*

Respondent has key personal knowledge and documents relevant to the issue of whether the defendants in the English Proceedings knew and intended that the auction of Yukos Finance was predetermined to be won by Promneftstroy at a price far below its fair market value. Other

defendants in the English Proceedings have denied that the auction of Yukos Finance had a pre-determined outcome, and due to Respondent's central role with respect to the auction, Claimants believe that Respondent has unique personal knowledge to rebut these pleadings. O'Sullivan Decl. ¶¶ 13-14.

Further, Claimants seek to obtain testimony and document discovery from Respondent concerning his actions related to the acquisition of Promneftstroy, including afterword in his capacity as director of Promneftstroy, and his and his codefendants' participation in and knowledge of: (i) the auction of Yukos Finance; (ii) the financing of Promneftstroy's bid for the Yukos Finance shares; (iii) the management of Promneftstroy through shell companies, and (iv) due diligence performed in connection with the Yukos Finance auction. Such discovery will further demonstrate that the auction of Yukos Finance was rigged in a corrupt auction process in which the defendants in the English Proceedings played an instrumental role. O'Sullivan Decl. ¶ 15.

### III. SECTION 1782 AUTHORIZES THE DISCOVERY PETITIONERS SEEK

#### A. Applicable Legal Principles

Petitions for discovery in aid of a foreign proceeding are governed by 28 U.S.C. § 1782(a), which provides that federal district courts may order discovery for use in a foreign or international tribunal from persons residing in or found in the district in which they sit.[3] Section 1782 was designed "to liberalize the assistance given to foreign and international tribunals." *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) (citation omitted). Where the information sought is relevant, it is "presumptively discoverable under § 1782." *In re Bayer*, 146 F.3d at 196. "Consistent with the statute's modest *prima facie* elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *Id.* at 195; *see also United Kingdom v.*

---

[3] Section 1782(a) provides: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing."

7

*United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("Congress has given the district courts . . . broad discretion in granting judicial assistance to foreign countries.").

The threshold statutory requirements of Section 1782(a) are: (1) the person(s) from whom discovery is sought must reside in or be found in this district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person." *Intel*, 542 U.S. at 249. When all three requirements are met, the decision to grant the request rests with the district court. *Id.* at 260-61; *Glock v. Glock, Inc.*, 797 F.3d 1002, 1005 (11th Cir. 2015) ("Congress has granted broad discretion to district courts to grant an application under § 1782."); *United Kingdom*, 238 F.3d at 1318–19 ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court.").

In *Intel*, the Supreme Court further articulated the following factors the district court should consider when determining whether to grant a petition pursuant to Section 1782(a): (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

The discovery that Petitioners seek in the present Application satisfies each statutory requirement of Section 1782, and the *Intel* discretionary factors weigh heavily in Petitioners' favor. *See Ex Parte Godfrey*, No. 15-24604 (granting application to serve subpoenas on Stephen Lynch and to compel him to appear for deposition); Serio Decl. Ex. 10.

**B.   The Information Sought Is Highly Relevant and Presumptively Discoverable**

Petitioners seek deposition and document discovery for use in proceedings before a foreign tribunal. The English Proceedings are currently pending in the High Court of Justice, Queen's Bench Division, Commercial Court. *See* Serio Decl. Exs. 8-9. In the English Proceedings, Petitioners argue, among other things, that the defendants caused them harm by wrongfully causing or facilitating the participation of Promneftstroy in the auction of shares in Yukos Finance, knowing and intending that it had been predetermined that such auction would purportedly be won by Promneftstroy at a pre-agreed price. *See* O'Sullivan Decl. ¶ 12.

Respondent has key personal knowledge relevant to show that the defendants in the English Proceedings knew and intended that the auction of Yukos Finance was predetermined to be won

by Promneftstroy at a pre-determined price. Other defendants in the English Proceedings have denied that the outcome of the auction of Yukos Finance was pre-determined, and Claimants believe that Respondent has unique personal knowledge that is relevant to rebut these pleadings. The discovery sought from Respondent would further demonstrate that the Lot 19 bankruptcy auction was rigged and carried out through a corrupt process in which the defendants in the English Proceedings played an instrumental role. O'Sullivan Decl. ¶¶ 13-15.[4]

### C. Petitioners' Request Meets the Statutory Requirements of Section 1782

#### 1. Stephen Lynch Is Found Within This District

Respondent currently maintains a residence within this District in Miami Beach, Florida. *See* Serio Decl. Ex. 6. Upon information and belief, Respondent is presently found within the District. Although Respondent's business interests may require extensive travel and maintenance of residences in other parts of the world, it is sufficient for the purposes of this Application that Respondent maintains a residence in Miami-Dade County. *See In re Neves*, 2011 WL 3502770, at *2 (S.D. Fla. Aug. 8, 2011) (witness satisfied the Fed. R. Civ. P. 45 "resides" requirement because she maintained a house in Miami, Florida and was staying at that house at the time she was served with a subpoena); *Minick v. Minick*, 149 So. 483, 488 (Fla. 1933) (recognizing that "domicile" and "residence" are not synonymous as a "person may have more than one residence at the same time, but only one domicile"). Indeed, this Court has previously found that "Respondent [Lynch] resides or may be found in the Southern District of Florida." *Ex Parte Godfrey*, No. 15-24604, at *1; Serio Decl. Ex. 10.

#### 2. The Discovery Sought Is Intended For Use in a Foreign Proceeding

The second threshold requirement for Section 1782 discovery is met because "[t]he discovery sought is for use in a proceeding before the High Court of Justice in England, United Kingdom, which is undisputedly a proceeding before a foreign or international tribunal under

---

[4] Although the location of relevant documents in Mr. Lynch's possession, custody or control is unknown, documents located abroad are discoverable pursuant to Section 1782 in this District. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("[T]he District Court could require that [the subpoena target] produce responsive documents and information located outside the United States—so long as [it] had possession, custody, or control of such responsive material."); *In re Chevron Corp.*, 2012 WL 3636925, at *10 (S.D. Fla. June 12, 2012) ("This Court [found] no limitation in § 1782 that prohibits the production of documents that are located abroad. . . . The statute requires only that the party from whom discovery is sought be located in the district; not that the documents be.").

9

Section 1782(a)." *In re Ex Parte Application of Glob. Energy Horizons Corp.*, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) (footnotes and internal quotation marks omitted). Specifically, the English Proceedings are before the High Court of Justice, Queen's Bench Division, Commercial Court, which permits submission of witness testimony and document discovery at its current stage. *See In re Application of Guy*, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) ("[T]he High Court of Justice . . . hears the testimony of witnesses and receives documents in evidence, very much as American courts do."). As any information obtained pursuant to this Application is intended to be used in good faith in the English Proceedings, Petitioners' Application meets Section 1782's second statutory requirement. *See* O'Sullivan Decl. ¶ 24; *see also Ex Parte Godfrey*, No. 15-24604, at *1 (holding second prong was satisfied by Petitioners' intention to use deposition and document discovery from Respondent Lynch in the related Dutch Proceedings); Serio Decl. Ex. 10.

### 3. Each of the Petitioners Is an Interested Person

Petitioners meet the third and final jurisdictional requirement of Section 1782 because, as parties to the English Proceedings, Petitioners are unquestionably "interested person[s]." *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) ("As a party to the dispute, [the petitioner] plainly is an 'interested person.'"); *In re Application of Guy*, 2004 WL 1857580, at *2 ("Applicants, as Claimants in that proceeding [before the English High Court of Justice], are interested persons within the meaning of § 1782."). Indeed, a litigant in a foreign proceeding before a foreign tribunal "may be the most common example of the interested person(s) who may invoke § 1782." *Intel*, 542 U.S. at 256.

## D. The Intel Discretionary Factors Weigh In Favor of Granting Petitioners' Application

The four discretionary *Intel* factors also weigh heavily in favor of granting this Application because Respondent has actively avoided participation in the English Proceedings, English courts routinely accept Section 1782 discovery, the Application does not circumvent English law or policy, and the Application is not unduly burdensome.

### 1. Respondent Has Actively Avoided Participation in the English Proceedings

Respondent is a party to the English Proceedings, O'Sullivan Decl. ¶ 3, but it is not necessary that a respondent be a non-party for a court to grant discovery. *See, e.g., In re Clerici,*

10

481 F.3d 1324, 1334–35 (11th Cir. 2007) (first *Intel* factor satisfied where respondent was party because he "left Panama and the Panamanian Court cannot enforce its order against [respondent] directly"). Here, Respondent cannot be considered a true participant in the English Proceedings as he has actively avoided service on multiple occasions, has not hired counsel, has not filed any pleadings, and has indicated that he will contest jurisdiction. *See* O'Sullivan Decl. ¶¶ 10, 17-28. In addition, English courts cannot compel nonresident parties, such as Respondent, to attend court for the purpose of giving evidence in a commercial dispute. *Id.* ¶ 20. Thus, whether due to Respondent's active non-participation in the English proceedings, or the limited reach of the English court over nonresident parties, the English court may not be able to obtain key discovery from Respondent without the assistance of the American courts. Accordingly, the first *Intel* prong weighs in Petitioners' favor. *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").[5]

### 2. The Nature of the Foreign Tribunal, the Character of the English Proceeding and the English Court's Receptivity to Assistance Favor Granting the Petition

The second *Intel* factor looks to the "receptivity" of the foreign tribunal. *Intel*, 542 U.S. at 259-60. Here, even if the discovery that Petitioners seek would be unavailable to Petitioners without the aid of an American court, the English court likely would be receptive to the requested discovery.[6] *See* O'Sullivan Decl. ¶¶ 22-24; *Intel,* 542 U.S. 241, 262 ("[N]ondiscoverability under English law [does] not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782." (internal citation omitted)). In addition, although Section 1782 does not require that a petitioner demonstrate that the evidence sought would be admissible in the foreign proceedings, the type of evidence sought here likely would be admissible in the English

---

[5] At the very least, if the foreign court "does not provide [Petitioner] with the necessary discovery mechanisms . . . the first Intel factor is neutral." *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013).

[6] "Receptivity" is not a question of whether the foreign court would or could permit this particular discovery. The Supreme Court in *Intel* explicitly found that Section 1782(a) does not "categorically bar a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." *Id.* at 259-60; *see also In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 (S.D. Fla. 2012) (noting that "the party requesting judicial assistance does not have to prove receptivity" of foreign tribunal).

11

Proceedings because "the English Action is pending in the High Court of Justice, . . . [which] hears the testimony of witnesses and receives documents in evidence, very much as American courts do." *In re Application of Guy*, 2004 WL 1857580, at *2 (allowing Section 1782 document discovery and depositions in connection with English litigation). Moreover, English courts regularly accept Section 1782 evidence regarding issues of liability. *See, e.g., In re Ex Parte Application of Glob. Energy Horizons Corp.*, 2015 WL 1325758, at *2 ("[T]he English Court would be receptive to the evidence because of how critical it is to determine the extent of Gray's breach and resulting damages.").

To that end, American "[d]istrict courts routinely allow applicants to obtain . . . Section 1782 discovery related to litigation pending in the United Kingdom." *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *4 (N.D. Ill. Apr. 8, 2010); *In re Ex Parte Application of Glob. Energy Horizons Corp.*, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) ("There is no authority suggesting the English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena."); *In re Application of Michael Wilson & Partners, Ltd.*, 2007 WL 2221438, at *5 (D. Colo. July 27, 2007) (allowing Section 1782 depositions in connection with litigation in the United Kingdom); *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989). Because the evidence sought in this application likely would be admitted into evidence by the English court and the English legal system is receptive to discovery obtained in the United States under Section 1782, the second *Intel* factor weighs heavily in favor of granting Petitioners' requested discovery.

### 3. This Application Is Not an Attempt to Circumvent English Law or Policy

The third discretionary *Intel* factor, whether the applicant is attempting to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," is meant to preclude bad faith misuses of the process. *Intel*, 542 U.S. at 265; *see also Green Dev. Corp. S.A. De C.V. v. Zamora*, 2016 WL 2745844, at *3 (S.D. Fla. May 10, 2016). Petitioners' Application is made in good faith and does not attempt to circumvent any English law or policy. Indeed, English courts have few requirements or formalities regarding the admission of relevant evidence, and the English court would have the power to order that any discovery obtained pursuant to this Section 1782 Application may or may not be relied upon in the English Proceedings. *See* O'Sullivan Decl. ¶ 24. Furthermore, the factual circumstances described above establish Petitioners' good faith need to obtain limited discovery regarding Mr. Lynch's

knowledge of and participation in the sham auction of Yukos Finance. Where, as here, evidence is probative of the issues in English Proceedings, the English court is highly likely to find that it is admissible. *Id.*

Moreover, as the Supreme Court observed in *Intel*, "there is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use." 542 U.S. at 261 (internal quotation marks omitted). Indeed, in *Intel*, the Court rejected the argument that a court should consider questions such as whether the requested discovery would be available in the foreign jurisdiction or whether "United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* at 263; *see also Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) ("Section 1782 does not require that every document discovered be actually used in the foreign proceeding.").

Here, the discovery Petitioners seek is consistent with their good faith desire to present a case in the English Proceedings. If the English Proceedings were required to proceed without the benefit of discovery from Respondent, it would be a detriment to Claimants' case against all defendants because of Respondent's central role as a participant in the sham auction of Yukos Finance and related wrongdoing. Accordingly, the third *Intel* factor also weighs heavily in favor of granting Petitioners' requested discovery.

### 4. The Discovery Is Neither Unduly Burdensome Nor Intrusive

Petitioners' discovery request is neither unduly burdensome nor intrusive. Petitioners seek a single deposition from Mr. Lynch, and document discovery limited to those issues relevant to the English Proceedings. *See London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (finding no undue burden "[g]iven the need for the evidence, and the minimal invasion required" where Section 1782 request was narrowly tailored). Petitioners request discovery from Respondent concerning his actions related to Promneftstroy and the Yukos Finance auction that occurred on August 15, 2007. There is no question that Mr. Lynch possesses knowledge and information related to whether the auction was conducted at arm's length, which entities provided the funding used to finance Promneftstroy's "winning" bid at the auction, and the management of Promneftstroy. As managing director of Monte-Valle, which acquired Promneftstroy in advance of the sham auction, Respondent would have critical information regarding Promneftstroy's "winning" bid and likely would have held numerous conversations and meetings with the members of the Consortium, Rosneft, and other involved in the fraudulent auction.

In applying Rule 45, which limits unduly burdensome discovery, to a Section 1782 petition, "it must be remembered that [Section 1782] is meant to be broadly and liberally construed in favor of permitting discovery to take place." *In re Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 198 (S.D. Tex. 1995) (citing *Hickman v. Taylor*, 329 U.S. 493 (1947)). As the requested discovery is neither unduly burdensome nor oppressive, the fourth and final *Intel* factor likewise weighs heavily in favor of granting Petitioners' request for discovery.

### E. *Ex Parte* Relief Is Appropriate Under Section 1782(a)

An *ex parte* proceeding is specifically contemplated and authorized under Section 1782(a). As an alternative to a noticed motion, a party may move *ex parte* for an order directing a third party to produce documents and testify at a deposition. Following the entry of the order, the third party may respond or otherwise plead. *See, e.g., In re Alianza Fiduciaria S.A.*, 2013 WL 6225179, at *4 (S.D. Fla. Oct. 24, 2013) (granting *ex parte* application and ordering that "[a]ny objections to the discovery permitted herein must be filed with the Clerk of Court no later than fourteen (14) days from the date of this Order"); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash."). The third party may always be afforded an opportunity to address the discovery sought.

Applications pursuant to Section 1782 are frequently made and granted on an *ex parte* basis, in which case notice—even to the discovery target itself—is provided *after* the court has already considered and ruled upon the application. At that point, the target has an opportunity to file objections. *See, e.g., In re Bracha Found.*, 2015 WL 6123204, at *1 (N.D. Ala. Oct. 19, 2015) ("The decisions of the Eleventh Circuit Court of Appeals affirm the granting of § 1782 applications in *ex parte* proceedings, and other decisions outside the Circuit acknowledge that the use of *ex parte* § 1782 applications is widespread and that granting them is not improper based on their *ex parte* nature."); *In re Braga*, 272. F.R.D. 621, 625 (S.D. Fla. 2011) ("[M]ost § 1782 applications . . . are filed and decided *ex parte*."); *Gushlak*, 486 Fed. App'x at 217 ("[I]t is neither uncommon or improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

Here, Petitioners would agree to a reasonable briefing schedule should Respondent choose to challenge the Court's order granting this *ex parte* Application, so long as Respondent agrees to return to the jurisdiction for deposition or to be deposed in some other neutral location.

14

15

## IV. CONCLUSION

Based on the foregoing and accompanying papers, Petitioners respectfully request that this Court grant Petitioners' *ex parte* Application in its entirety.

**RESPECTFULLY SUBMITTED** in Miami, Florida, on May 1, 2017.

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>*Of Counsel for David A. Godfrey and Yukos Finance B.V.*<br>200 Park Avenue<br>New York, New York, 10166<br>Telephone: (212) 351-3917<br>Fax: (212) 351-5246<br>E-mail: rserio@gibsondunn.com | RIVERO MESTRE LLP<br>*Attorneys for David A. Godfrey and Yukos Finance B.V.*<br>2525 Ponce de Leon Boulevard, Suite 1000<br>Miami, Florida 33134<br>Telephone: (305) 445-2500<br>Fax: (305) 445-2505<br>Email: jmestre@riveromestre.com<br>Email: kblanson@riveromestre.com |
| Robert F. Serio<br>*pro hac vice motion pending* | By: _____<br>Jorge A. Mestre<br>Florida Bar No. 088145<br>Kadian Blanson<br>Florida Bar No. 098880 |